**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF NEW MEXICO**

CHANDA TATUM,

       Plaintiff,

v.                               No. Civ. 12-01060 LH/LFG

PROBUILD COMPANY LLC,

       Defendant.

**<u>MEMORANDUM OPINION AND ORDER</u>**

On October 19, 2012, Defendant filed a Petition to Compel Arbitration and Award Attorneys' Fees (ECF No. 9). After briefing was complete, Plaintiff filed a Motion to Strike Affidavit of Maury Cuje Attached to Defendant's Reply Brief in Support of its Motion to Compel Arbitration (ECF No. 22). The Court, having considered the motions, briefs, arguments, evidence, and relevant law, concludes that the motion to strike should be denied as moot and that the petition to compel arbitration and award attorneys' fees should be denied.

**I.**     **FACTUAL BACKGROUND**

Plaintiff worked for ProBuild, Hope Lumber Company, and its predecessor L & P Building Supply from 1992 until January 21, 2011. Pl.'s Resp., Ex. 1 ("Aff. of Chanda Tatum") (ECF No. 15-1) ¶ 1. Hope Lumber Company ultimately merged into ProBuild Company LLC ("ProBuild"). Def.'s Pet., Ex. A ("Aff. of Maury L. Cuje") (ECF No. 9-1) ¶¶ 2, 4. At the time of her termination, Plaintiff had been the Area Credit Manager for ProBuild's New Mexico operations, and had been in that position for almost 15 years. Aff. of Chanda Tatum (ECF No. 15-1) ¶ 1.

In 2003, Hope Lumber Company incorporated a Dispute Arbitration Policy into its Open

Door Policy.  *See* Pl.'s Resp., Ex. 2 ("2003 Handbook") (ECF No. 15-2) at 2 of 4.  On January 1, 2008, Defendant ProBuild promulgated a revised Employee Handbook.  *See id.*, Ex. 3 ("2008 Handbook") (ECF No. 15-3) at 1 of 11.  Contained within the 2008 Handbook are sections on Open Door/Problem Solving and Dispute Arbitration Policy, which are substantively similar to those sections contained in Hope Lumber Company's 2003 Handbook.  *Compare id.* at 3-4 of 11 *with* Pl.'s Resp., Ex. 2 (ECF No. 15-2) at 2-4 of 4.  The Open Door/Problem Solving section discusses resolving differences or disputes, first with the local managers, and then through Corporate Management through Human Resources.  *See* 2008 Handbook (ECF No. 15-3) at 3 of 11.  "Any differences or disputes not resolved in this manner should be resolved through the Dispute Arbitration Policy."  *Id.*

The Dispute Arbitration Policy states:

> Under this Program, *which is a condition of continued employment* (for all employed or re-employed on or after January 1, 2008) and mutually binding upon the Company and the employee(s), all claims and disputes a current or former employee within the United States might have arising out of the employee's employment or termination of employment, which are not resolved through the Company's Open Door – Problem Solving Policy or through other normal human resource channels, shall be resolved through binding arbitration.

*Id.* at 4 of 11 (emphasis added).  The Policy states the intent of the company to submit to arbitration "all disputes an employee might have against the Company and any of its subsidiaries, affiliates, officers, directors, employees, and agents."  *Id.*  Disputes broadly include claims brought under state or federal law, including Title VII, intentional torts, and all forms of unlawful discrimination, among others.  *Id.* at 4-5 of 11.

The Dispute Arbitration Policy further explains:  "Because this Program promotes arbitration as the exclusive remedy for claims covered by the Program, [] both the Company and employees will enter into an agreement to be bound by those laws best promoting the

enforceability of arbitration agreements, including the Federal Arbitration Act . . . ."  *Id.* at 5 of

11.  Plaintiff signed an Acknowledgment of Receipt of Dispute Arbitration Program on January

11, 2008.  *See* Def.'s Pet., Ex. A (ECF No. 9-1) at 12 of 12.

That same day Plaintiff also signed a "Mutual Arbitration Agreement," contained within

the 2008 Handbook and made between the undersigned employee and the "Company," meaning

ProBuild Holdings, Inc. or any of its subsidiaries or affiliates.  *See* Def.'s Pet., Ex. A (ECF No.

9-1) at 4-6 of 12; Pl.'s Resp., Ex. 3 (ECF No. 15-3) at 9-10 of 11.  ProBuild is a subsidiary of

ProBuild Holdings, Inc.  *See* Aff. of Maury L. Cuje (ECF No. 9-1) ¶ 4.  The Arbitration

Agreement states it "is made in consideration for the continued 'at-will' employment of

Employee, the benefits and compensation provided by Company to Employee, and Employee's

and Company's mutual agreement to arbitrate as provided in this Agreement."  Def.'s Pet., Ex. A

(ECF No. 9-1) at 4 of 12.

As relevant here, the Mutual Arbitration Agreement further states as follows:

> Employee and Company hereby agree that, except as specifically excepted herein
> and to the extent permitted by law, any dispute, claim, controversy, cause of
> action, or suit that arises out of, involves, or relates in any way to Employee's
> employment with Company or the termination of Employee's employment with
> Company (collectively referred to as "Disputes") that Employee may have, at any
> time following the acceptance and execution of this Agreement, with or against
> Company and/or its officers directors, employees and/or agents, and any Dispute
> that Company may have with or against Employee, unless resolved by through the
> Company's Open Door – Problem Solving procedure, shall be submitted to and
> settled by final and binding arbitration under the Company's Dispute Arbitration
> Program (the "Program"), the provisions of which are incorporated into this
> Agreement.

> Disputes covered by this Agreement include any claim under applicable
> state or federal law Employee might have against the Company. . . . Disputes
> include . . . claims arising under such statutes as Title VII of the Civil Rights Act
> of 1964 . . . .  Disputes also include any claims for wages or other compensation
> due; breach of any contract; negligence; intentional torts;  . . . all forms of
> unlawful discrimination . . .; sexual and other kinds of harassment, workers'
> compensation retaliation, status or membership or benefit claims with regard to

3

any welfare or non-qualified benefit plan, . . . ; violation of any federal, state, or other governmental law, statute, regulation, or ordinance; and any other matters arising under common or statutory law. . . .

Notwithstanding anything stated otherwise in this Agreement, either the Company or Employee shall have the right to seek an injunction or other equitable relief from a court in connection with a claim for breach or violation of a non-competition, non-solicitation, non-disclosure or similar protection of business and confidential information obligation; however, the enforceability of any such obligation and merits of the underlying claim of breach or violation shall nonetheless be resolved through arbitration in accordance with this Agreement. . . .

. . . Company shall bear administrative costs and fees and be solely responsible for paying the arbitrator's fee except as provided in the Program. Each party to the arbitration shall initially be solely responsible for its/his/her own costs and attorney's fees, relating to any Dispute and/or arbitration; however, the arbitrator shall have the power to apportion attorney's fees and costs, as well as to provide for any other type of damages or relief, in the final award, all as described in the Program. Should any party institute any court action against the other with the respect to any Dispute required to be arbitrated under this Agreement, or pursue any Dispute by any method other than through arbitration or as otherwise provided for herein, the responding party shall be entitled to recover from the initiating party all damages, costs, expenses, and attorney's fees incurred as a result of such action.

*Id.*, Ex. A (ECF No. 9-1) at 4 of 12.

The Dispute Arbitration Policy also contains a provision on fees and expenses in which the Company will pay all expenses and fees of the arbitrator and administrative costs, subject to a few exceptions. *Id.*, Ex. A (ECF No. 9-1) at 8 of 12. One such exception is that the arbitrator, after considering factors such as the relative merit of the complaint and income level of the employee, and in his or her sole discretion, may require the employee to pay as part of the final order in the arbitration fees, expenses, costs or charges, including part or all of the legal expenses of the Company. *Id.*, Ex. A (ECF No. 9-1) at 8-9 of 12.

Additionally, in the Dispute Arbitration Policy portion of the 2008 Handbook is a subsection entitled "Changes, Modification, or Discontinuation of Program" that provides:

> Under this Program, the Company has the right to change, modify, or discontinue the Program at any time upon no less than 10 days' written notice to the Company's current employees . . . .  The terms of the Program that are in place at the time a disputed action takes place, however, are the terms which will be binding on the Company and the employee or former employee even if the Program is amended or discontinued during the pendency of that dispute.

Pl.'s Resp., Ex. 3 (ECF No. 15-3) at 8 of 11.

In November 2009, ProBuild distributed a revised Policies & Procedures Manual to its employees.  *See* Pl.'s Resp., Ex. 4 ("2009 Manual") (ECF No. 15-4) at 1, 12 of 12.  The 2009 Manual states:

> It is intended to provide general information about the practices and policies governing the employees of the Company, and is not intended to be an express or implied contract. . . . In any case where the contents of this manual describe a Company policy or plan, in the event of conflict, the actual policy or plan will control.

Pl.'s Resp., Ex. 4 (ECF No. 15-4) at 2 of 12.  Plaintiff was provided with the 2009 Manual and she understood that she was expected to follow it.  Aff. of Chanda Tatum (ECF No. 15-1) ¶ 7.

The 2009 Manual includes a section on "Human Resources," and sub-sections therein titled, "Complaint Investigation and Resolution Procedure:   MySafeWorkplace.com," "Corrective Action Policy," "Voluntary Termination Policy & Procedure," and "Involuntary Termination Policy & Procedure."  Pl.'s Resp., Ex. 4 (ECF No. 15-4) at 5 of 12.  The Policy Statement within the subsection "Complaint Investigation and Resolution Procedure: MySafeWorkplace.com" states: "This document supersedes all other policies, procedures, practices and guidelines relating to the matters set forth herein.  Where this Program contradicts the terms of a collective bargaining agreement, negotiated agreement, other written employment agreement . . . , the provisions of such agreement . . . shall govern."  *Id.*, Ex. 4 (ECF No. 15-4) at 7 of 12.  This section contains a Reference section, including "Employee Handbook (to be developed in 2010)," but contains no reference to the 2008 Handbook.  *Id.*, Ex. 4 (ECF No. 15-4)

5

at 9 of 12.  The section sets out procedures for investigating complaints.  *See id.*, Ex. 4 (ECF No. 15-4) at 8 of 12.

Similarly, the Involuntary Termination Policy & Procedure section states that it supersedes all other policies, procedures, and practices "relating to the matters set forth herein," unless the section contradicts the terms of another written employment agreement.  *See id.*, Ex. 4 (ECF No. 15-4) at 10 of 12.  The purpose of this section is to state "ProBuild's position regarding instances involving decisions to involuntarily terminate employees."  *Id.*  The section discusses the internal steps and consensus decisions that should be taken when an employee is involuntarily terminated, including working with Human Resources representatives, conducting a prompt investigation, drafting and then reviewing a summary report with the recommended course of action with the regional President or his designee.  *See id.*, Ex. 4 (ECF No. 15-4) at 11-12 of 12.  Arbitration is not mentioned in this section.  *See id.*

In December 2010, Plaintiff discovered that an employee she supervised had been stealing from ProBuild, in an amount greater than $100,000, by using dummy deposit slips for Cash on Delivery payments from deliveries at the lumber yards.  Aff. of Chanda Tatum (ECF No. 15-1) ¶¶ 2-3.  She immediately reported the theft to her boss.  *See id.* ¶ 2.  On January 21, 2011, Plaintiff was fired, purportedly for failure to follow standard operating procedures that permitted the employee to steal money, despite the fact that some male managers were responsible for the cash handling procedures and they were not fired.  *See id.* ¶¶ 3-6.  Although Plaintiff sent an email to corporate officers disputing the grounds for her termination, no one at ProBuild ever told her she could have her termination reviewed through the Open Door Policy set forth in the 2008 Handbook.  *See id.* ¶ 7.

On August 24, 2012, Plaintiff filed suit in the Second Judicial District Court, State of

New Mexico, for wrongful termination based on her gender in violation of New Mexico public policy, Title VII, and the New Mexico Human Rights Act.  *See* Notice of Removal, Ex. A ("Complaint") (ECF No. 1-1).  Defendant removed the case on October 12, 2012.  Notice of Removal (ECF No. 1).  Defendant subsequently filed a Petition to Compel Arbitration and Award Attorneys' Fees (ECF No. 9).  Plaintiff opposes the motion, arguing among other things, that the Mutual Arbitration Agreement she signed was not in effect at the time she was terminated.  She contends that the 2009 Manual superseded the 2008 Handbook containing the Dispute Arbitration Policy and Mutual Arbitration Agreement.  Plaintiff also argues that the Mutual Arbitration Agreement lacked consideration and that it is unconscionable, and thus, unenforceable.   Defendant asserts that the Mutual Arbitration Agreement is a contract independent of the 2008 Handbook; the 2008 Handbook merely served as the conduit through which the agreement was delivered to employees; and thus, the Mutual Arbitration Agreement was in effect, regardless of whether the 2008 Handbook was in effect at the time of Plaintiff's termination.  Defendant also contends that consideration supported the agreement and that it is not unconscionable.

## II.   STANDARD

The Federal Arbitration Act ("FAA") provides:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, . . . *shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.*

9 U.S.C. § 2 (emphasis added).  Arbitration agreements may thus be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability.  *Rent-A-Center, West, Inc. v. Jackson*, __ U.S. __, 130 S.Ct. 2772, 2776 (2010).

Congress's purpose in enacting the FAA was "to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991).  The FAA thus "creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625 (1985) (quoting *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983)).

The FAA "provides two parallel devices for enforcing an arbitration agreement:  a stay of litigation in any case raising a dispute referable to arbitration, 9 U.S.C. § 3, and an affirmative order to engage in arbitration, § 4." *Moses H. Cone Memorial Hosp.*, 460 U.S. at 22.  Under Section 4 of the FAA, a court may order the parties to arbitrate "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue."  9 U.S.C. § 4.  A court should only decide as a matter of law whether the parties entered into an agreement to arbitrate when there is no genuine issue of material fact concerning the formation of the agreement.  *See Avedon Engineering, Inc. v. Seatex*, 126 F.3d 1279, 1283 (10th Cir. 1997); *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.*, 636 F.2d 51, 54 (3d Cir. 1980).  When faced with a motion to compel arbitration that is opposed based on whether an agreement to arbitrate has been made between the parties, the court must give to the opposing party the benefit of all reasonable doubts and inferences that may arise.  *See Par-Knit Mills*, 636 F.2d at 54.

In enacting the FAA, Congress did not intend to force parties to arbitrate in the absence of an agreement, and therefore the "existence of an agreement to arbitrate is a threshold matter which must be established before the FAA can be invoked."  *Avedon*, 126 F.3d at 1286-87.

8

When the parties dispute the existence of a valid arbitration agreement, the presumption in favor

of arbitration disappears.  *Dumais v. American Golf Corp.*, 299 F.3d 1216, 1220 (10th Cir.

2002).   Consequently, a federal court looks to state law principles of contract formation to

determine whether an agreement to arbitrate had been reached:

> In applying state law, [a] court may not . . . construe [an arbitration] agreement in
> a manner different from that in which it otherwise construes nonarbitration
> agreements under state law.  However, it is only when [a] state-law principle . . .
> takes its meaning precisely from the fact that a contract to arbitrate is at issue that
> the state law will be preempted by the FAA.

*Avedon*, 126 F.3d at 1287 (internal quotations and citations omitted).  Thus, courts generally

apply state law on the formation of contracts to determine whether a party agreed to arbitrate a

dispute.  *Hardin v. First Cash Fin. Servs., Inc.*, 465 F.3d 470, 475 (10th Cir. 2006).  "A party

seeking judicial enforcement of a contract bears the burden of persuasion." *Farmington Police*

*Officers Ass'n Communication Workers of America Local 7911 v. City of Farmington*, 2006-

NMCA-077, ¶ 16, 137 P.3d 1204.

**III.    ANALYSIS**

**A.    The Court will assume, without deciding, that the 2009 Manual did not
supersede the Dispute Arbitration Program and the Mutual Arbitration
Agreement and that there was consideration for the Mutual Arbitration
Agreement.**

Even assuming, as Defendant urges, that the 2009 Manual did not replace the Dispute

Arbitration Program and Mutual Arbitration Agreement in the 2008 Handbook and that those

provisions were in effect, the Court nonetheless concludes that the Mutual Arbitration

Agreement is unconscionable, and thus, unenforceable.  The Court therefore does not need to

resolve definitively whether the 2009 Manual indeed superseded the Dispute Arbitration

Program and Mutual Arbitration Agreement or whether consideration supported the agreement.

Accordingly, the Court will also deny as moot Plaintiff's motion to strike paragraphs 3

and 4 of the Affidavit of Maury J. Cuje, attached to Defendant's reply.  Plaintiff argues that the assertions in the paragraphs are conclusory and lack factual foundation.  Ms. Cuje, ProBuild's Associate General Counsel, avers in Paragraph 3:  "The 2008 Arbitration Agreement and the Program, attached to my October 19, 2012 Affidavit as Exhibits A-A and A-B, were in effect at the time Chanda Tatum was terminated on January 21, 2011."  Aff. of Maury L. Cuje (ECF No. 20-1) ¶ 3.  Exhibit A-A is a copy of the Mutual Arbitration Agreement and Exhibit A-B is a copy of the Dispute Arbitration Policy (the "Program").  Ms. Cuje further asserts in Paragraph 4: "The 2009 Policies & Procedures Manual did not supersede the 2008 Arbitration Agreement and Program, and did not terminate either Ms. Tatum's or ProBuild's obligations to arbitrate any and all disputes related to Ms. Tatum's employment with ProBuild under the 2008 Arbitration Agreement and Program."  *Id.* ¶ 4.  These statements relate to the argument that the Dispute Arbitration Program and Mutual Arbitration Agreement in the 2008 Handbook were still in effect at the time of Plaintiff's termination.  Because this Court is deciding the motion to compel arbitration based on the unconscionability defense, this Court does not need to consider the evidence in paragraphs 3 and 4 of the Affidavit of Maury J. Cuje.  The motion to strike will thus be denied as moot.  The Court will now turn to the merits of the unconscionability defense.

**B.      The Mutual Arbitration Agreement is both procedurally and substantively unconscionable, and thus, unenforceable.**

Plaintiff seeks to avoid application of the Mutual Arbitration Agreement on grounds that it is unconscionable.  Unconscionability is an equitable doctrine that allows courts to render unenforceable an agreement that is unreasonably favorable to one party while precluding a meaningful choice of the other party.  *Rivera v. American Gen. Fin. Servs., Inc.*, 2011-NMSC-033, ¶ 43, 259 P.3d 803. Unconscionability is analyzed from both substantive and procedural perspectives.  *Id.*   A contract may be rendered unenforceable under either substantive or

10

procedural unconscionability, or a combination of both.  *Id*. ¶ 47.  The two perspectives have an inverse relationship: "[t]he more substantively oppressive a contract term, the less procedural unconscionability may be required for a court to conclude that the offending term is unenforceable."  *Cordova v. World Finance Corp. of New Mexico*, 2009-NMSC-021, ¶ 24, 208 P.3d 901.  The party seeking to set aside an arbitration agreement on unconscionability grounds has the burden of persuasion.  *See*, *e.g.*, *Parilla v. IAP Worldwide Servs., VI, Inc.*, 368 F.3d 269, 277 (3d Cir. 2004) ("[T]he burden of proving such unconscionability lies with the party challenging the contract provision."); *Strausberg v. Laurel Healthcare Providers, LLC*, __-NMSC-__, No. 33,331, slip op. at 2 (June 27, 2013) (holding that party asserting arbitration agreement is unconscionable has burden to prove unconscionability because it is an affirmative defense to contract enforcement).

Plaintiff contends that the arbitration agreement is procedurally unconscionable because ProBuild drafted the agreement, ProBuild has unfair bargaining power over Plaintiff as her employer, and ProBuild did not permit any negotiating, so it was a take-it-or-hit-the-highway agreement.  Plaintiff notes that a provision expressly stated that the employee's submission to arbitration was a condition of remaining employed.  Additionally, Plaintiff argues that the arbitration provisions are substantively unconscionable because they exclude from arbitration the claims ProBuild is most likely to bring.  The arbitration exclusion provision states:

> Notwithstanding anything stated otherwise in this Agreement, either the Company or Employee shall have the right to seek an injunction or other equitable relief from a court in connection with a claim for breach or violation of a non-competition, non-solicitation, non-disclosure or similar protection of business and confidential information obligation; however, the enforceability of any such obligation and merits of the underlying claim of breach or violation shall nonetheless be resolved through arbitration in accordance with this Agreement.

2008 Handbook (ECF No. 15-3) at 10 of 11.  Plaintiff asserts that only an employer will have

claims for breach of non-competition, non-solicitation, non-disclosure, or other similar business proprietary or confidential rights, and therefore, the clause is unreasonably one-sided in favor of ProBuild.  Plaintiff also argues that the attorney fee provision is unfairly one-sided in favor of ProBuild because, if a party institutes a court action for a dispute subject to the arbitration agreement, the responding party, which is most likely ProBuild, is entitled to recover from the initiating party all damages, costs, expenses, and attorney's fees incurred as a result of such action.[1]

### 1.    Procedural Unconscionability

Procedural unconscionability "examines the particular factual circumstances surrounding the formation of the contract, including the relative bargaining strength, sophistication of the parties, and the extent to which either party felt free to accept or decline terms demanded by the other."  *Rivera*, 2011-NMSC-033, ¶ 44 (quoting *Cordova*, 2009-NMSC-021, ¶ 23).  When determining procedural unconscionability, a court should look at whether the contract is one of adhesion, a standardized contract offered by a party with superior bargaining strength to a weaker party on a take-it-or-leave-it basis, without opportunity for bargaining.  *Id.*

The Mutual Arbitration Agreement was offered on a take-it-or-leave-it basis.  The Dispute Arbitration Policy itself stated that the Program "is a condition of continued employment."  2008 Handbook (Doc. 15-3) at 4 of 11.  It thus constitutes an adhesion contract. *Cf. Kepas v. eBay*, 412 Fed. Appx. 40, 46 (10th Cir. Nov. 2, 2010) (unpublished opinion) ("The Arbitration Agreement is clearly an adhesion contract. It is a standardized agreement that eBay, the party with superior bargaining power, drafted and provided to Kepas. Further, eBay required that Kepas complete the agreement at the end of his probationary period, and the express

---

[1] Plaintiff additionally contends the arbitration agreement is substantively unconscionable because the Dispute Arbitration Policy only requires an employee's claims to be subject to arbitration.  The Court rejects this interpretation of the contract and concludes that Defendant mutually agreed to submit certain claims to arbitration.

language of the agreement conditions Kepas's continued employment on his acceptance of its terms.").

Determining that the Mutual Arbitration Agreement is an adhesion contract does not end the procedural unconscionability analysis. "Although not all adhesion contracts are unconscionable, an adhesion contract is procedurally unconscionable and unenforceable 'when the terms are patently unfair to the weaker party.'" *Rivera*, 2011-NMSC-033, ¶ 44 (quoting *Cordova*, 2009-NMSC-021, ¶33). Additional factors in the analysis also include the use of high pressure tactics; the relative education, sophistication, or wealth of the parties; and the relative scarcity of the subject matter of the contract. *Guthmann*, 103 N.M. at 510. Although there is no evidence of high-pressure tactics beyond the language in the clause itself, at the time she signed the agreement, Plaintiff had worked for the company for approximately 16 years, and a reasonable person would certainly feel compelled and pressured to sign such an agreement in order to continue employment in a long-held job. The record also indicates that ProBuild is a large company with many employees, and thus, in a position of greater wealth and sophistication than Plaintiff. The inequality in bargaining power is great in this case, so the Court will now turn to examine the fairness of the terms themselves. *See* Restatement (Second) of Contract § 208 cmt. d. ("[G]ross inequality of bargaining power, together with terms unreasonably favorable to the stronger party, may confirm indications that the transaction involved elements of deception or compulsion, or may show that the weaker party had no meaningful choice, no real alternative, or did not in fact assent or appear to assent to the unfair terms.")

### 2.    Substantive Unconscionability

Substantive unconscionability focuses on the legality and fairness of the contract terms, including concerns such as the commercial reasonableness and fairness of the terms, the purpose

and effect of the terms, and the one-sidedness of the terms.  *Rivera*, 2011-NMSC-033, ¶ 45.  A contract term is substantively unconscionable if it is "grossly unreasonable" and against public policy.  *Id.* (quoting *Cordova*, 2009-NMSC-021, ¶¶ 22, 31).  In other words, contract terms that "unreasonably benefit one party over another are substantively unconscionable."  *Id.* ¶ 46 (quoting *Cordova*, 2009-NMSC-021, ¶ 25).  Courts are to determine whether one-sided terms render an arbitration clause unenforceable on a case-by-case basis.  *Bargman v. Skilled Healthcare Group, Inc.*, 2013-NMCA-006, ¶ 17, 292 P.3d 1 (2012), *cert. granted*, 299 P.3d 423.

In *Cordova v. World Finance Corp.*, 2009-NMSC-021, the New Mexico Supreme Court voided an inherently one-sided form arbitration provision used by a small loan company that limited a borrower to mandatory arbitration as a forum to settle all disputes, while reserving for the lender the exclusive option of access to the courts for all remedies the lender was "most likely" to seek against a borrower.  *Id.* ¶ 1.  In affirming the district court's refusal to uphold the arbitration agreement, the New Mexico Supreme Court described the one-sided arbitration provisions as "egregious" and explained:

> In all cases of default, which is the most likely reason for lenders to take action against their borrowers, it broadly reserved the option of availing itself directly of any and all "remedies in an action at law or in equity, including but not limited to, judicial foreclosure or repossession."
>
> In striking contrast, as one of [the lender]'s borrowers, Cordova had no rights under the form agreement to go to any court for any reason whatsoever . . . . It is highly unlikely that [the lender] will find itself at odds with the contractual terms of its own form agreements, or the circumstances of its lending or collection practices, or claim it was the victim of a fraudulent consumer scheme, or have any other reason to make a claim against its borrowers for violation of consumer protection laws.

*Id.* ¶¶ 26-27.  The court noted that it need not rely on any finding of procedural unconscionability because "the substantive unconscionability of these one-sided arbitration provisions is so compelling."  *Id.* ¶ 32.

Two years later, the New Mexico Supreme Court in *Rivera* again concluded that a form arbitration agreement was unconscionable.  2011-NMSC-033, ¶ 54.  In *Rivera*, the form car title loan used by the title loan lender contained an arbitration agreement that encompassed "any and all claims" that the borrower could conceivably have against the lender.  *Id.* ¶ 3.  The arbitration provisions, however, exempted from arbitration certain claims that the lender might have against the borrower.  *Id.*  Although not necessary to its decision, the New Mexico Supreme Court reached the unconscionability issue in order to "correct the Court of Appeals' overly narrow construction of [the New Mexico Supreme Court's] holding in *Cordova*."  *See id.* ¶¶ 10, 40.  The New Mexico Supreme Court clarified that "unfairly one-sided contract provisions" are unconscionable.  *See id.* ¶ 49.  It rejected the Court of Appeals' reasons for its conclusion that the lender reasonably exempted judicial foreclosure and repossession from claims covered by arbitration, noting that arbitrators have broad powers to resolve statutory claims and claims involving a lender's security interest in collateral.  *See id.* ¶¶ 51-52.  The New Mexico Supreme Court instead held:

> By excepting foreclosure and repossession from arbitration, American General retained the right to obtain through the judicial system the only remedies it was likely to need. . . . American General's ability under the arbitration clause to seek judicial redress of its likeliest claims while forcing Rivera to arbitrate any claim she may have is unreasonably one-sided.

*Id*. ¶ 53.  It therefore concluded that the arbitration provisions were "unfairly one-sided and void under New Mexico law."  *Id.* ¶ 54.

The New Mexico Court of Appeals followed *Cordova* and *Rivera* in concluding that the plain terms of a nursing home arbitration agreement were enough evidence to find it unconscionable because "common sense" dictates that the exempted claims were those a nursing home was most likely to pursue, and conversely, the claims subject to arbitration were those

most likely that a resident would pursue.  *See Figueroa v. THI of New Mexico at Casa Arena Blanca LLC*, No. 30,477, slip op. at 25 (N.M.Ct.App. July 18, 2012), *cert denied*, No. 33,762, 297 P.3d 332 (N.M. Oct. 3, 2012).  The Court of Appeals recognized that the arbitration agreement could be construed to grant some rights to a judicial forum to the resident, unlike in *Cordova* and *Rivera*, but nonetheless concluded that the rights did not sufficiently act to remedy the gross disparity that resulted from the nursing home's reservation of its most likely claims to a judicial forum, while the resident's most likely claims were subject to arbitration.  *Id.*, slip op. at 22.

In a subsequent decision, the New Mexico Court of Appeals followed the reasoning of *Figueroa* but also indicated that factual evidence could be developed regarding the one-sided nature of claims exempted from arbitration.  *See Ruppelt v. Laurel Healthcare Providers, LLC*, 2013-NMCA-014, ¶ 17, 293 P.3d 902 (2012).  It appears to be the arbitration proponent's burden to develop that record where the language of the terms themselves, based on common sense, are sufficient evidence that the terms are unfairly one-sided in nature.  *See id.*

The arbitration exclusion clause here facially applies to both parties.  The question remains, however, whether common sense dictates that seeking an injunction or other equitable relief from a court "in connection with a claim for breach or violation of a non-competition, non-solicitation, non-disclosure or similar protection of business and confidential information obligation" are the types of remedies that an employer, not an employee, is most likely to pursue.

The case of *Mercuro v. Superior Court*, 116 Cal.Rptr.2d 671, 677 (Cal. Ct. App. 2002), is instructive, wherein the California Court of Appeals determined that a similar clause in an arbitration agreement was substantively unconscionable for the following reasons:

> The arbitration agreement specifically covers claims for breach of express or
> implied contracts or covenants, tort claims, claims of discrimination based on

race, sex, age or disability, and claims for violation of any federal, state or other governmental constitution, statute, ordinance, regulation or public policy. Thus the agreement compels arbitration of the claims employees are most likely to bring against Countrywide. On the other hand, the agreement specifically excludes "claims for injunctive and/or other equitable relief for intellectual property violations, unfair competition and/or the use and/or unauthorized disclosure of trade secrets or confidential information...." Thus the agreement exempts from arbitration the claims Countrywide is most likely to bring against its employees.

. . . This is what we have here: Countrywide requires the weaker parties— its employees—to arbitrate their most common claims while choosing to litigate in the courts its own claims against its employees. . . .

Countrywide further argues the agreement is not unconscionable because the exception for intellectual property claims applies to it *and* its employees. This is not the case. The exception for intellectual property claims only applies if the claim is accompanied by a request for injunctive or other equitable relief. An employee terminated for stealing trade secrets, for example, must arbitrate his wrongful termination claim under the agreement but Countrywide can avoid a corresponding obligation to arbitrate its trade secrets claim against the employee by the simple expedient of requesting injunctive or declaratory relief. . . . [A]n arbitration agreement lacks basic fairness and mutuality if it requires one contracting party, but not the other, to arbitrate all claims arising out of the same transaction or occurrence or series of transactions or occurrences.

*Id.* (internal quotations omitted).

The Tenth Circuit, in applying California law, examined the *Mercuro* case in *Kepas v. eBay*. The Tenth Circuit upheld as not unconscionable a clause in an arbitration agreement that excluded "from arbitration the claims 'that either party has that arise out of the Employee Proprietary Information and Inventions Agreement.'" 412 Fed. Appx. at *47. The Tenth Circuit concluded that, because the exclusion applies to all claims arising out of the proprietary agreement, the employee would be able to pursue litigation for all conduct arising from the same transaction that the employer could litigate. *Id.* Significantly, though, the Tenth Circuit distinguished its case from *Mercuro* based on the absence of an injunctive and equitable relief exclusion: "While the plain language of the agreement [in *Mercuro*] excluded from arbitration

both employee and employer intellectual property claims, *it effectively only allowed litigation of the employer's claims as employees would generally not seek injunctive or equitable relief*. In contrast, the arbitration agreement at issue applies to all employment-related claims and excludes from arbitration both employer and employee claims regardless of the relief sought." *Id.* at *47-48 (emphasis added and internal citations omitted).

The case here involves an arbitration exclusion clause more similar to the clause in *Mercuro* than in *Kepas*. Both the California Court of Appeals and the Tenth Circuit reasoned that employees would generally not seek injunctive or equitable relief for claims for intellectual property violations or for breach of non-competition, non-disclosure of trade secrets or other confidential information, while an employer would. The claims exempted are those that protect "business and confidential information" – rights contractually created to protect employers, not employees. The type of equitable relief claim an employee conceivably might bring that falls within the exemption is a declaratory judgment action, but even there the employee would bring suit as a way of protecting itself from an anticipated suit by the employer. Common sense also dictates that breach of contract or tort actions are the most likely claims an employee may bring against an employer, which are here subject unequivocally to arbitration. An employer is not as likely to bring a tort claim for misappropriating funds or misrepresentation. Consequently, ProBuild has exempted from arbitration the claims it is most likely to bring -- the injunctive relief claims arising from non-competition, non-solicitation, non-disclosure or similar protection of business or confidential information -- and confined to arbitration the claims its employees are most likely to bring.

ProBuild nonetheless argues that, although certain claims for injunctive or other equitable relief are exempted initially from arbitration, the latter portion of the exemption provision states

that "the enforceability of any such obligation and merits of the underlying claim of breach or violation shall nonetheless be resolved through arbitration in accordance with this Agreement." 2008 Handbook (ECF No. 15-3) at 10 of 11.  ProBuild contends that the arbitration exemption only embodies what is already permitted in law for a court to enter an order for provisional remedies.  It is true that "the weight of federal appellate authority recognizes some equitable power on the part of the district court to issue preliminary injunctive relief in disputes that are ultimately to be resolved by an arbitration panel." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Salvano*, 999 F.2d 211, 214 (7th Cir. 1993).  The provision at issue here, however, does not confine the injunctive or equitable relief to "preliminary" injunctive relief or to temporary, emergency relief.  Instead, it applies broadly to an injunction or other equitable relief, with no qualifying language that the provision is only for when the matter is urgent and an arbitrator is not able to act timely.

Additionally, ProBuild did not create a general exemption from arbitration for injunctive or equitable relief as to all claims.  Instead, ProBuild cherry-picked certain claims that it was most likely to bring -- claims arising from contractual rights created to protect the employer. ProBuild drafted the exemption agreement to ensure that the types of claims contractually designed to protect it go to court for the initial determination of equitable relief.  Although the injunctive relief claims could still proceed to arbitration as to the enforceability of the non-competition, non-solicitation, non-disclosure or similar protection of business and confidential information obligation and on the merits of the underlying claim of breach or violation, the Court agrees with Plaintiff that such cases are unlikely in fact to proceed further to arbitration.  The court, in issuing injunctive or equitable relief, will do so only after having made an initial merit determination.   Under the Mutual Arbitration Agreement, the arbitrator, at his or her sole

discretion, may require the employee to pay part or all of the legal expenses of ProBuild, upon considering the relative merit of the complaint and the income level of the employee, among many factors.  After a court has ruled in favor of ProBuild, it is unlikely that an employee will take the risk of incurring ProBuild's arbitration expenses, where the court's decision serves as an indicator of how the arbitrator may view the merits of the case.  Moreover, ProBuild, after having received the court's determination on the merits of issuing injunctive or equitable relief, is unlikely to continue to arbitration, as employers are unlikely to seek damages against an employee for such claims.  ProBuild, thus, constructed an exemption from arbitration that it, not its employee, is most likely to use in order to enforce particular contracts from which it receives the primary benefit.  Consequently, the Mutual Arbitration Agreement is unfairly one-sided.

Finally, Plaintiff argues that the attorney's fees provision is substantively unconscionable because it requires the party seeking to institute a court action for claims subject to arbitration to pay all costs, expenses, damages, and attorney's fees incurred as a result of the action.  As previously discussed, ProBuild has exempted from arbitration the types of claims it is most likely to bring while confining to arbitration the claims its employees are likely to bring.  Consequently, this fee provision is most likely to apply to employees, not ProBuild.  As with the arbitration exemption, this fee provision is unfairly one-sided in favor of ProBuild.

In sum, the contract terms here are unfairly favorable to ProBuild, the stronger party who drafted the agreement, while precluding a meaningful choice by Plaintiff, whose assent was conditioned on her continued employment with a company for whom she had worked for 16 years.  Both procedural and substantive unconscionability are present.  The Court therefore determines that the Mutual Arbitration Agreement is unconscionable.

The Court will therefore not enforce the Mutual Arbitration Agreement and this case will

proceed in court.  The Court will also deny ProBuild's request for its costs and attorneys' fees incurred in bringing the petition to compel arbitration, as the provision is unenforceable based on the unconscionability defense.

**IT IS THEREFORE ORDERED** that

1.      Defendant's Petition to Compel Arbitration and Award Attorneys' Fees (**ECF No. 9**) is **DENIED**; and

2.      Plaintiff's Motion to Strike Affidavit of Maury Cuje Attached to Defendant's Reply Brief in Support of its Motion to Compel Arbitration (**ECF No. 22**) is **DENIED AS MOOT**.


_____
**SENIOR UNITED STATES DISTRICT JUDGE**